# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| SHADYA JARECKE,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,<br><br>Defendant. | CV 13-146-BLG-CSO<br><br>**ORDER ADDRESSING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Shadya Jarecke's ("Jarecke") Complaint alleges two claims against Defendant American National Property and Casualty Co. ("ANPAC"). Count 1 alleges a violation of Montana's Unfair Trade Practices Act ("UTPA"), §§ 33-18-201 et seq., for failure to properly pay underinsured motorist ("UIM") coverage benefits. Count 2 alleges that ANPAC acted with malice. *See Complaint (ECF 4)*[1] *at 3*.

Pending are the parties' cross motions for partial summary judgment. For the reasons discussed below, the Court will grant ANPAC's motion and deny Jarecke's motion.

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3*.

-1-

I.  **BACKGROUND**[2]

This action arose after Jarecke was injured in a motor vehicle collision with underinsured motorist Billie Jo Scheetz ("Scheetz") on June 29, 2012, in Billings, Montana. Jarecke's Complaint alleges that "ANPAC received information from which it knew that its asserted limits of $250,000 were fully exposed and consumed by the value of [Jarecke's] loss." *ECF 4 at 2.*

ANPAC provided insurance coverage to Jarecke and her parents,[3] including UIM coverage, under a single policy covering three vehicles. Jarecke claims that available UIM policy limits of $250,000 per person "stack"[4] for each of the three vehicles for a total of $750,000. *ECF 4 at ¶¶ 4 and 13.* ANPAC denies that UIM policy limits stack for the three vehicles. *Answer (ECF 5) at ¶ 12.* Rather, ANPAC maintains that

---

[2]Unless otherwise noted, the background facts are not in dispute.

[3]The Court sometimes refers to Jarecke individually or to Jarecke and her parents as "Jarecke."

[4]"'Stacking' means to add the policy limit of ... underinsured motorist (UIM) ... coverage from an insurance policy on one vehicle with the ... UIM ... policy limits from the policy on another vehicle. For example, an insured with three vehicles and paying a separate premium for UIM coverage on each vehicle could 'stack,' or add, the three UIM coverages together and feasibly collect the triple amount." *Parish v. Morris*, 278 P.3d 1015, 1020, n.1 (Mont. 2012) (citing *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892 (Mont. 2003)).

Jarecke's applicable UIM policy limit is $250,000. *Id. at ¶ 4.*

The relevant facts surrounding the UIM limits dispute are as follows.[5] Before 2004, ANPAC used a per-vehicle pricing method for its Montana UIM coverage. In 2004, ANPAC filed with the state of Montana to change to a per-policy premium charge for UIM coverage. When ANPAC decided to change from a per-vehicle to a per-policy UIM premium charge, it recognized that it insured 753 vehicles in Montana in 412 policies. ANPAC then performed simple division and concluded that for each of the 412 Montana policies, it insured an average of 1.8 vehicles with UIM coverage. *ECF 34-1 (Penick Depo.) at 7.* ANPAC then used this 1.8 multiplier as a part of its calculation of a per-policy UIM premium in 2004. *Id. at 8.*

On August 29, 2007, the Montana Commissioner of Securities and Insurance ("Insurance Commissioner") sent an advisory memorandum notifying motor vehicle liability insurers that they could avoid stacking "if the premiums charged for the coverage by the insurer actuarially

---

[5]The facts are taken from the parties' submissions respecting the partial summary judgment motions and, except where noted, are undisputed. *See ANPAC's Stmt. of Undisputed Facts (ECF 29); Jarecke's Stmt. of Undisputed Facts (ECF 34); Jarecke's Stmt. of Disputed Facts (ECF 35); and ANPAC's Stmt. of Genuine Issues (ECF 39).*

-3-

reflect the limiting of coverage separately to the vehicles covered by the Policy and the premium rates have been filed with the [C]ommissioner." *ECF 30-1 at 1*. The Insurance Commissioner provided insurers with instructions for filing rates for UIM and other coverages. ANPAC responded by submitting its actuarially approved UIM rates to the Insurance Commissioner. The Insurance Commissioner later notified ANPAC that ANPAC was substantially in compliance with MCA § 33-23-203 respecting its filings for non-stacked UIM rates.[6] *ECF 30-3 at 1*.

Jarecke's parents first applied for automobile insurance with ANPAC on December 18, 2007. At the time, her parents were the only policy holders and insured two vehicles with ANPAC – a 1997 Ford Expedition and a 1994 Ford F-250 truck. The insurance application allowed them to elect to purchase UIM coverage in various per person and per accident limits. The application provided:

> I request Uninsured and Underinsured Motorist Coverage with the limits of protection indicated above, <u>with the full</u>

---

[6]The Insurance Commissioner's advisory memorandum was sent "[t]o alert insurers of the newly amended" MCA § 33-23-203(1), which the Montana Legislature revised in 2007 and which became effective on April 17, 2007. *Parish v. Morris*, 278 P.3d 1015, 1018 (Mont. 2012). MCA § 33-23-203(1) is discussed *infra*.

<u>understanding that, regardless of the number of vehicles described in this policy, only one premium is charged for Uninsured or Underinsured Motorist Coverage and, therefore, only one limit of protection applies to any claim arising out of any one accident to which this coverage is applicable.</u>  I acknowledge that the coverages and options shown in this section have been explained to me and it is hereby agreed that my selections apply under this liability insurance policy and future renewals, replacements, or reinstatements of such policy.  If I decide to select another option at some future time, I must advise my ANPAC agent or the company in writing before the section becomes effective.

*ECF 31-1 (emphasis added).* The Jareckes signed the specific coverage selection on the application.

The Jareckes' policy contains a limitation on UIM coverage and prohibits stacking, providing:

LIMITS OF LIABILITY USED IN COVERAGE UIM ONLY

The limits of liability shown in the Declarations apply, subject to the following:

(1) the limit for "each person" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services or consortium, to one person in one accident;

(2) subject to the limit for "each person" the limit for "each accident" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services or consortium, to two or more persons in one accident;

We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured

persons, claims, claimants or policies, or vehicles involved in the accident.

*ECF 31 at 4.*

The vehicle Jarecke was driving at the time of the June 29, 2012 collision with Scheetz, a 1998 Nissan Pathfinder, was added to the Jareckes' policy on April 26, 2011. The UIM premium for the Jarecke policy before the addition of this third vehicle was $77, and the premium remained at $77 after the vehicle was added. The UIM premium for the policy period that began following the addition of this third vehicle to the Jarecke policy remained at $77.

Jarecke settled her claims against Scheetz for the $50,000 limits of Scheetz's policy. ANPAC has paid Jarecke $6,000 under the Medical Payments Coverage provision of the Jareckes' policy. And ANPAC advanced $50,000 in UIM benefits to Jarecke before she filed this action in state court on September 12, 2013. ANPAC removed the case to this Court on November 12, 2013. As noted, Jarecke alleges that ANPAC violated Montana's UTPA and acted with malice. Her Complaint seeks compensatory damages, punitive damages, and a declaration that the applicable UIM limits are $750,000. The UIM declaration request is the only subject of the parties' pending cross

motions for partial summary judgment.

## II. SUMMARY OF PARTIES' ARGUMENTS

ANPAC argues that the UIM limits under its policy with Jarecke are $250,000 rather than stacked limits of $750,000, as Jarecke claims in her Complaint. *ANPAC's Br. in Support of its Mtn. for Partial Summary Judgment (ECF 28) at 2.* ANPAC argues that the UIM limits do not stack because: (1) the Jarecke family paid a single premium for UIM coverage, *id. at 4-7*; (2) ANPAC's policy and filings with Montana's Insurance Commissioner comply with MCA § 33-23-203, Montana's so-called "anti-stacking" statute, *id. at 3-4, 10-11*; and (3) the Jarecke's "insurance application and policy unambiguously and conspicuously placed [them] on notice that UIM policy limits would not stack[,]" *id. at 2, 4-7, 11-13*.

Jarecke argues that the $250,000 UIM limits under the ANPAC policy should stack, but not in the amount of $750,000 – that is, $250,000 for each of the three vehicles covered under the ANPAC policy, as she claimed in her Complaint. Rather, she now argues that the UIM limits should be $450,000, which amount reflects policy limits of 1.8 times the UIM policy limits of $250,000. *Jarecke's Combined Br.*

*in Opposition to ANPAC's Mtn. and in Support of Jarecke's Mtn. for Partial Summary Judgment (ECF 33) at 5-6*. Jarecke argues that the UIM limits should stack at 1.8 times the UIM policy limits of $250,000 because: (1) ANPAC charged more than a single premium for UIM coverage by using a "multiplier scheme" that actually resulted in a premium charged for 1.8 vehicles, *id. at 4-6, 8-10*; (2) ANPAC's single premium per policy, which is actually based on 1.8 vehicles rather than on a single vehicle, provides "illusory coverage" in violation of well-established Montana law that voids anti-stacking policy provisions as contrary to public policy, *id. at 12-13*; and (3) it is irrelevant whether Jarecke accepted an insurance policy with anti-stacking provisions because, under Montana law, "[i]f ANPAC charged more than a single premium, its coverage stacks and any contrary provision is void[,]" *id. at 12-13*.

In reply, ANPAC argues that:

(1) Jarecke has failed to refute ANPAC's material facts, including that: (a) the Jareckes paid a single premium for UIM coverage; (b) ANPAC's insuring agreement and filings comply with MCA § 33-23-203; and (c) the Jareckes were on notice that UIM policy limits would not stack, *ANPAC's Combined Reply and Response Br. (ECF 38) at 2-3*;

(2) respecting ANPAC's proposed statement of facts with which

Jarecke disagrees, Jarecke "fails to cite to any admissible evidence supporting her denial of each paragraph" as the Local Rules require but instead Jarecke: (a) relies on facts that are not material to the issue at hand or are directly contradicted by unrebutted evidence of record; and (b) offers insufficient denials without evidentiary support, *id. at 6-8*;

(3) Jarecke's cross-motion is factually unsupported because ANPAC was no longer using the 1.8 vehicle "multiplier" in 2012 as Jarecke claims but rather was comparing its revenue "to its losses, expenses, and profit to determine whether it needs to adjust its premiums[,]" as noted in the affidavit of Robert Penick ("Penick"), an actuary and ANPAC's vice president of personal lines pricing, *id. at 9-10*;

(4) ANPAC charges a single premium per policy for UIM coverage and "unambiguously notifies its insureds that UIM policy limits do not stack[ ]" in accordance with both MCA § 33-23-203 and Montana cases construing it, *id. at 10-11*;

(5) because ANPAC charges only one premium, the cases upon which Jarecke relies where the supreme court determined that an insurer charging separate premiums for each insured vehicle are inapplicable, *id. at 12-13*; and

(6) ANPAC's UIM limits do not stack and their policy provisions do not violate public policy because Jarecke paid a single premium and was on notice that UIM limits would not stack, *id. at 14-15*.

Finally, Jarecke argues that: (1) "the Insurance Commissioner's acceptance of ANPAC's multiplier enhanced premium is immaterial to the legal issue – or for that matter any factual issue – before the Court ... [because] [t]he Commissioner does not have the jurisdiction and

authority to declare the rights and responsibilities of the parties to an insurance contract[,]" *Jarecke's Reply Br. (ECF 42) at 2*; (2) "even eight years after it employed the multiplier from 2004 to capture the average of 1.8 vehicles per policy, the increased premium from that multiplier was never backed out of ANPAC's UIM premium scheme and remained in effect in the 2012 policy[,]" *id. at 2-3*; and (3) ANPAC provided illusory coverage which is prohibited under Montana law, so the UIM limits should stack, *id. at 3*.

## III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the opposing party will have the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Id.*

When parties file cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The fact that both parties have moved for summary judgment does not vitiate the Court's responsibility to determine whether disputed issues of material fact are present. *Id.*

The parties here agree that the determination of whether ANPAC's UIM limits stack is a question of law for the Court to decide. *ECF 28 at 8, 38 at 10.*

## IV. DISCUSSION

Montana's "anti-stacking" statute provides the following limitation of liability under a motor vehicle liability policy:

> (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:

> \*   \*   \*
>
> (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.

MCA § 33-23-203(1)(c).

Here, there is no dispute that ANPAC filed its premium rates with the commissioner. Also, as noted, the parties do not dispute that ANPAC charged the Jareckes one premium for UIM coverage, regardless of the number of vehicles covered, beginning from the time the Jareckes first applied for automobile insurance with ANPAC on December 18, 2007. The declarations pages for all of the policy periods during which the Jareckes have insured vehicles with ANPAC have been made part of the record. *ECF 31-4.* The following shows the coverage periods, the single UIM premium charged (for coverage limits of $250,000 per person and $500,000 per accident), and number of vehicles insured, with occasional changes indicated:

| POLICY PERIOD | UIM PREMIUM CHARGED | NUMBER OF VEHICLES |
| --- | --- | --- |
| 12-27-2007 to 06-27-2008 | $53 | Two |
| 06-27-2008 to 12-27-2008 | $56 | Two |
| 12-27-2008 to 06-27-2009 | $71 | Two |
| 06-27-2009 to 12-27-2009 | $71 | Two |
| 12-27-2009 to 06-27-2010 | $72 | Two |
| 06-27-2010 to 12-27-2010 | $72 | Two |
| 12-27-2010 to 06-27-2011 | $77 | Two (Third added on 04-26-2011) |
| 06-27-2011 to 12-27-2011 | $77 | Three |
| 12-27-2011 to 06-27-2012 | $82 | Three (One removed on 07-03-2012 |
| 06-27-2012 to 12-27-2012 | $102 | Three |
| 12-27-2012 to 06-27-2013 | $102 | Two |
| 06-27-2013 to 12-27-2013 | $79 | Two (Third added on 09-25-2013) |
| 12-27-2013 to 06-27-2014 | $74 | Three |

*ECF 31-4.*

From this evidence, it is undisputed that ANPAC charged a single premium for UIM coverage for all vehicles listed in the policy. Also, it is undisputed that the UIM premium that ANPAC charged the Jareckes both before and after the addition of the 1998 Nissan Pathfinder remained the same. And the premiums ANPAC charged for the UIM coverage "actuarially reflect the limiting of coverage separately to the vehicles covered by the policy" so as to fall within MCA § 33-23-203(1)(c)'s restriction on adding limits of coverage together. This conclusion is bolstered by the deposition testimony of Robert Penick, ANPAC's vice president of personal lines pricing and an actuary, who testified respecting ANPAC's calculation of UIM coverage premiums as follows:

> Q. .... And in 2012, ANPAC, for UIM bodily injury coverage in Montana, employed a per-policy premium regardless of the number of vehicles insured within that policy, whether it would be one, two, three, or four; correct?
>
> A. Yes.
>
> Q. And the pricing model that it employed continues to utilize the 1.8 number of vehicles per policy in 2012, didn't it?
>
> A. No.
>
> Q. What number did it use?
>
> A. It – it – we no longer needed the number of vehicles per

> policy. At that time, we – when we look at a rate change, we begin with the last base premium that was approved by the department, and we go through a calculation to determine how much that premium needs to be adjusted in order to provide the revenue that we need to pay the claims and the expenses and allow the company a profit. And from that calculation, we know how much we need to adjust the base rate.

*ECF 34-1 at 9* (Penick Depo., p. 29, ll. 9-25; p. 30, ll. 1-4).

Jarecke has not presented evidence that rebuts Penick's testimony. Also, Jarecke has presented neither direct evidence nor evidence from which a reasonable inference could be drawn that ANPAC charged anything but a single premium for UIM coverage for all vehicles listed in the policy or that the premiums ANPAC charged for the UIM coverage fail to actuarially reflect the limiting of coverage separately to the vehicles covered by the policy.

Also, because ANPAC charged a single premium for UIM coverage for all vehicles listed in the policy, the cases upon which Jarecke relies in maintaining UIM coverage limits should stack are unpersuasive. In each case, the Montana Supreme Court addressed a situation in which an insurance company charged separate premiums for each insured vehicle. *See Dakota Fire Ins. Co. v. Oie*, 968 P.2d 1126, 1135 (Mont. 1998); *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 124-25

(Mont. 1998); *Ruckdaschel v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 700, 702 (Mont. 1997); and *Bennett v. State Farm Mut. Auto. Ins. Co.*, 862 P.2d 1146, 1149 (Mont. 1993). Thus, these decisions are inapposite to this case.

Here, ANPAC charged only one premium for UIM coverage regardless of the number of vehicles insured. Accordingly, this case is markedly similar to *Parish v. Morris*, 278 P.3d 1015, 1019-20 (Mont. 2012). In *Parish*, plaintiffs had two vehicles insured on a policy with their insurance company. Their policy included uninsured motorist ("UM") coverage. Following an accident with an uninsured motorists, plaintiffs sought to stack the UM coverage provided in their policy. The insurer refused, so plaintiffs sued seeking a declaratory judgment. The Montana Supreme Court affirmed the district court's grant of summary judgment in favor of the insurer concluding that the insurer charged only one premium for UM coverage and the unambiguous policy language made it clear that stacking would not be permitted. 278 P.3d at 1018-20. As the foregoing discussion demonstrates, the same is true in this case.

As noted, however, Jarecke's principal argument is that ANPAC

has applied since 2004 – and continues to apply – an impermissible "multiplier" to determine the amount of the single premium that it charges so that the premium is actually more than what the consumer would pay for UIM coverage for a single vehicle. Because of this "multiplier," Jarecke argues, ANPAC charges more than a single premium, its coverage stacks, and any contrary policy provisions are void. The Court is not persuaded.

Jarecke has failed to present evidence to support her position. As Penick's deposition testimony demonstrates, ANPAC did not use in 2012 and does not presently use the 1.8 number of vehicles per policy:

> [The 1.8] number isn't directly a part of [the per policy UIM bodily injury coverage] because – you could look in the future periods. The average number of vehicles per policy could be 1.2. It could be 1.6. We don't really go back and calculate – we don't calculate what it is in the future. What we do is we rely on the revenue, the premium, and – and compare that to our losses, expenses, and profit to determine if we need to make a change in the future.

*ECF 34-1 at 9* (Penick Depo., p. 31, ll. 22-25; p. 32, ll. 1-6).

Also, in an affidavit filed in support of ANPAC's motion for partial summary judgment, Penick explained:

> In 2004, ANPAC changed its policy of charging a separate premium for each insured vehicle for ... UIM coverage and began charging a single premium per policy for these

coverages. At that time, ANPAC discontinued its consideration of the number and type(s) of vehicles insured on a policy and stopped making any adjustments to the premiums charged based on the type of vehicle(s) insured or the safety rating of the relevant vehicle(s). ANPAC continued to use the county and zip code of the insured(s) and other discount factors, such as whether any insured is enrolled in a work group plan, to calculate ... UIM premiums.

\*   \*   \*

The premiums charged for UIM coverage for the time the Jareckes first insured with ANPAC on December 27, 2007 actuarially reflect the limitation of coverage to a single UIM premium and UIM limit ....

\*   \*   \*

The number of vehicles insured on the Jarecke policy has never been considered when determining the Jareckes' ... UIM premiums.

\*   \*   \*

ANPAC has never charged the Jareckes more than one (1) premium for ... UIM coverage, regardless of the number of vehicles insured on the Jarecke policy.

*ECF 30* (Affidavit of Robert Penick) *at ¶¶ 7, 15, 16, and 17*.

Jarecke has presented no evidence to rebut this evidence or to support her "multiplier" scheme argument. Nor has Jarecke presented any pertinent Montana legal authority supporting application of such a fractional "multiplier" under these facts. Thus, the Court must deny

her motion for partial summary judgment. And based on the foregoing, the Court will grant ANPAC's motion for partial summary judgment that the UIM limits available to Jarecke for the June 29, 2012, collision are $250,000.

## V. **CONCLUSION**

For the reasons discussed above, IT IS ORDERED that ANPAC's motion (*ECF 27*) is GRANTED and the UIM limits available to Jarecke for the June 29, 2012, collision are $250,000.

Jarecke's motion (*ECF 32*) is DENIED.

DATED this 10th day of June, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge
