IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SHADYA JARECKE,<br><br>               Plaintiff,<br><br>vs.<br><br>AMERICAN NATIONAL<br>PROPERTY AND CASUALTY<br>CO.,<br><br>               Defendant. | CV 13-146-BLG-CSO<br><br>**ORDER ON<br>MOTIONS IN LIMINE** |

Shadya Jarecke's ("Jarecke") Complaint asserts two claims against American National Property and Casualty Co. ("ANPAC"). Count 1 alleges that ANPAC violated Montana's Unfair Trade Practices Act ("UTPA"), §§ 33-18-201 et seq., by failing to properly pay underinsured motorist ("UIM") coverage benefits. Count 2 alleges that ANPAC acted with malice. *See Complaint (ECF 4)*[1] *at 3*.

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3*.

1

The following motions in limine are before the Court:

1. Jarecke's motion in limine to exclude the testimony of ANPAC's liability expert, Guy Rogers, *Jarecke's Mtn. in Limine re: Rogers (ECF 50);*

2. ANPAC's motion in limine to exclude the testimony of Jarecke's liabilty expert, David Bauer, *ANPAC's Mtn. in Limine re: Bauer (ECF 59);* and,

3. ANPAC's motion in limine to exclude the testimony of Craig Clarke, whom Jarecke identified as an expert witness to testify concerning her economic loss, *ANPAC's Mtn. in Limine re: Clarke (ECF 61).*

Having reviewed the parties' briefs and submissions, the Court rules as set forth below.

I. **BACKGROUND**

The Court has summarized the underlying facts in earlier Orders. *See Order [Addressing Jarecke's Motion for Partial Summary Judgment] (ECF 26*) and *Order Addressing Cross Motions for Partial Summary Judgment (ECF 43).* Thus, the Court will repeat them here only where necessary to lend context to the discussion.

II. **LEGAL STANDARD**

Motions in limine are procedural devices to obtain pretrial rulings on the admissibility of evidence. Judges have broad discretion when

ruling on motions in limine but a motion in limine should not be used to resolve factual disputes or weigh evidence. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *C & E Services, Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004); *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008); *Wilkins v. K-Mart Corp.*, 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins*, 487 F. Supp. 2d at 1219.

Also, it is settled that rulings on motions in limine are provisional. Such "rulings are not binding on the trial judge [who] may

always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

## III. DISCUSSION

### A. Motions to Exclude Rogers' and Bauer's Testimony

#### 1. Parties' Arguments

Jarecke seeks to exclude the anticipated trial testimony of attorney Guy Rogers ("Rogers"). *ECF 50 at 1*. Jarecke styles her motion as one to preclude "the admission of legal conclusion testimony from Defendant's expert, Mr. Guy Rogers." *ECF 50 at 1*. But ultimately, however, Jarecke seeks the Court's "Order in limine excluding attorney Mr. Rogers from testifying" at the trial of this matter, apparently seeking to preclude him from testifying in any manner. *Jarecke's Opening Br. (ECF 51) at 8*.

4

ANPAC represents that Rogers is expected to render opinions concerning "an insurer's duties and the applicable standard of care with respect to adjusting an insured's underinsured motorist ("UIM") and medical-payments coverage ("Med-Pay") claims in Montana." *ANPAC's Resp. Br. (ECF 56) at 2*. ANPAC further notes that Rogers also will "apply these standards to ANPAC's conduct in handling [Jarecke's] claims." *Id*.

Jarecke argues that the Court should preclude Rogers from testifying for two principal reasons. First, Jarecke argues that federal courts, including this one, consistently bar experts such as Rogers "from opining about legal conclusions." *ECF 51 at 4*. Courts consistently preclude attorneys from testifying about what such attorneys believe is Montana's law applicable to bad faith claims, Jarecke argues, because such opinions and conclusions interfere with the Court's role as the "sole arbiter of the law." *Id*. (citation omitted). And, Jarecke argues, courts also consistently preclude expert witnesses such as Rogers from applying the law to the facts of a case, or applying the facts to the relevant law in UTPA cases. *Id. at 6*.

5

Second, Jarecke argues that Rogers lacks the requisite qualifications "to testify about how an insurer should handle a claim." *Id.* at 7. She argues that Rogers "has no foundation to offer expert opinions about how a claim should be handled from an insurer's perspective[ ]" because he has worked only as a lawyer and has no experience about claims handling beyond his experience as a lawyer. *Id.* at 7-8.

In response, ANPAC asserts that Rogers' "testimony will not invade the province of the jury and he is qualified to educate the jury on the standards and practices ANPAC was required to follow in adjusting Jarecke's UIM and Med-Pay claims." *ECF 56 at 5.* ANPAC argues that Rogers has "specialized knowledge [that] will assist the jury with understanding ... whether ANPAC complied with Montana's standards with respect to adjusting an insured's UIM and Med-Pay claims." *Id.* at 6.

ANPAC also argues that Rogers is qualified to render the opinions he has expressed in his expert report. *Id.* at 8. ANPAC notes that Jarecke has failed to identify how Rogers' "knowledge, skill, experience,

6

training, and education are lacking in the areas of evaluation, investigation, adjusting, or payment of UIM or Med-Pay claims in Montana." *Id. at 9*. In fact, ANPAC argues, Rogers "has extensive experience, knowledge, and skill in these areas[ ]" as is evident in his report and curriculum vitae. *Id*. ANPAC notes that Rogers has trained insurance claims professionals in the standards about which he is expected to opine in this case, thus demonstrating he is qualified to testify as an expert witness. *Id. at 11-12*.

In its corresponding Motion in Limine, ANPAC seeks to exclude the anticipated trial testimony of attorney David Bauer ("Bauer") because Bauer's report contains legal conclusions that "improperly invade[ ] the province of the trier of fact." *ECF at 6*. Bauer's report also does not discuss "good claims-handling standards that claims professionals utilize in adjusting UIM or medical payments claims in Montana[,]" but rather improperly applies "facts to Montana law and is properly excluded." *Id. at 7-9*.

Second, ANPAC argues that, even if the Court permits Bauer to testify, "it must prohibit Mr. Bauer from making speculative

conclusions which are not based on the evidence in the record." *Id. at 9-10*. Specifically, ANPAC argues that Bauer should not be permitted to testify respecting his assertion that ANPAC may have had "ulterior motives" for handling Jarecke's insurance claims. *Id. at 10*. ANPAC argues that Bauer's opinion lacks any factual foundation and allowing it would be unfairly prejudicial to ANPAC. *Id. at 10-11*.

In response, Jarecke argues that ANPAC's motion actually challenges Bauer's expert report rather than his anticipated trial testimony. *Jarecke's Resp. Br. to Mtn. to Exclude Bauer (ECF 66) at 1-2*. She concedes that Bauer's report is inadmissible as his testimony, but argues that the report is not required under the rules to be in the form of admissible testimony. On the other hand, she argues, Bauer's testimony is governed by "Rules 701-705, 601, 401-403, Mont. R. Evid." *Id. at 2*. She argues that Bauer's anticipated testimony complies with all of the requirements of these rules and that, at trial, her "counsel has no intention of asking Mr. Bauer to express legal conclusions [nor] does Mr. Bauer have any intention of couching his testimony in expressions that invade the [Court's] exclusive ability and duty to inform the jury of

8

the applicable law." *Id.*

Also, Jarecke argues, she agrees with ANPAC that Bauer may not testify respecting whether ANPAC was motivated to act as it did based on its own financial interests as that is a question for the jury. *Id.* at 3-4. But, she argues, Bauer may "certainly express his opinion that an insurer must not give greater weight to its own financial interests than that of its insured." *Id.* at 3. Finally, Jarecke argues that "ANPAC's motion is not well taken, for the reason that its 'complete statement' is not required to have been sanitized of legal conclusion expression under Rule 26, Fed. R. Civ. P. at the time of disclosure, and is not a guarantee of impermissible testimony at trial." *Id.* at 4.

### 2. <u>Legal Standard</u>

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

>       (b) the testimony is based on sufficient facts or data;
>
>       (c) the testimony is the product of reliable principles and methods; and
>
>       (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Although Rule 702 should be applied with a 'liberal thrust' favoring admission, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993), it requires that "[e]xpert testimony . . . be both relevant and reliable[.]" *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citations omitted). The trial court acts as a "gatekeeper" by excluding evidence that does not meet standards of reliability and relevance. *Id.* at 1197. Expert testimony is subject to exclusion if it falls short of meeting either requirement. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

The proponent of an expert's testimony bears the burden of establishing that the testimony is admissible. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The trial court has broad discretion respecting admission of expert testimony, and also

retains "the same kind of latitude in deciding *how* to test an expert's reliability." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (emphasis in original) (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

   3.   <u>Analysis</u>

Here, the parties move to exclude the testimony of Rogers and Bauer primarily because of concerns that the witnesses' opinions will improperly contain legal conclusions. The parties' concerns are valid and thus the Court will grant the motions in part.

Although an expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact under Fed. R. Evid. 704(a), the expert may not "give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation, quotation, and emphasis omitted); *see also United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). And an expert's opinion is improper to the extent it directs a jury as to the result it should reach

in making a decision. *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002). The tasks of resolving questions of law and "instructing the jury as to the applicable law '[are] the distinct and exclusive province[s]' of the court." *Hangarter*, 373 F.3d at 1016 (*quoting United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)).

As noted in *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006), the line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern. In *McIver*, the Fourth Circuit identified improper legal conclusions by determining whether the terms used by the witness have distinct and specialized meaning in the law, citing cases that found testimony on "extortion", "deadly force", and "unreasonably dangerous" inadmissible. *Id.* (citations omitted). Similarly, the court in *Nationwide Transport Finance v. Cass Information Systems, Inc.,* 523 F.3d 1051, 1059-60 (9th Cir. 2008), concluded that a witness may not explain how conduct violated a statute (the UCC) because such testimony "would, in effect, instruct the jury regarding how it should decide the key question

12

whether [the defendant] violated a statute and thus acted improperly...." *Id. See also United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2013) (holding that witness may not give testimony about "reasonableness" of a shooting because that is a legal conclusion).

This Court has reached similar conclusions. In *Bourdon v. Mountain West Farm Bureau Mut. Ins. Co.,* 2013 WL 4446968 (D. Mont.), the court granted a motion in limine to exclude expert testimony that the defendant violated the Unfair Trade Practices Act, explaining:

> While expert witnesses may testify as to ultimate issues of fact, they may not testify as to ultimate issues of law. So an expert may testify as to the facts underlying a plaintiff's allegation that the defendant violated a statute, but the expert can't say that the defendant did, in fact, violate the statute.
>
> Here, [the expert] repeatedly asserts in his expert report, either explicitly or implicitly, that Mountain West violated the Unfair Trade Practices Act. For example, [he] writes: "MWFB violated its duty to promptly, fairly and in good faith settle Ms. Bourdon's claims where liability was reasonably clear." This language tracks the duty outlined [in] Montana Code Annotated § 33-18-201(6). [This] conclusion is a legal conclusion that he isn't permitted to offer.

*Id.* at *6. Similarly, in *Howell v. Earl*, 2014 WL 2593573 (D.Mont), the Court ruled:

13

> [A]n expert's opinion is improper to the extent it directs a jury as to the result it should reach in making a decision. The task of resolving questions of law and instructing the jury as to the applicable law is the distinct and exclusive province of the Court. ... The proper interpretation of a statute is a question of law for the Court to resolve. And, a statement as to whether an individual violated a specific statutory provision is an opinion on a legal conclusion which an expert witness is not permitted to give.

*Id.* at **2,3 *(internal quotations and citations omitted).*

Applying this law to the present motions, it is clear that the expert reports of both Rogers and Bauer contain opinions that must be excluded. For example, Rogers' report states: "[I]t is my opinion the actions or conduct of ANPAC are reasonable and consistent with its duties and responsibilities to handle claims in Montana including its responsibilities under Montana's UTPA." *ECF 51-1 at 7*. Conversely, Bauer's report states: "ANPAC unreasonably failed to attempt a prompt, fair and equitable settlement of this claim. ANPAC violated subsections (1), (4) and (6) of the Montana Unfair Claim Settlement Practices Act." *ECF 56-2 at 13*. These are legal conclusions that improperly invade the province of the Court and instruct the jury as to the result it should reach. They will not be permitted. A properly

qualified expert may, however, testify regarding industry conditions, standards, and practices. *See Nationwide Transport Finance v. Cass Information Systems, Inc., supra, 523 F.3d at 1058.*

At this juncture, the Court will not grant either party's motion in limine to completely exclude the testimony of the other party's liability expert witness. Stated simply, it is unclear what that testimony will be or whether portions of it may be admissible. Thus, the Court will grant the motions to the extent they seek to exclude improper legal conclusions, including testimony as to how the UTPA applies to the facts of this case and whether ANPAC's conduct did, or did not, violate the UTPA. Also, as previously ordered, the experts will be limited to testimony on properly disclosed opinions. *See ECF 20 at 4 (citing Fed. R. Civ. P. 26(a)(2)(B)).*

The Court will deny the motions to the extent they seek to prevent these witnesses from testifying altogether. Counsel must determine whether any of their anticipated testimony satisfies the criteria set forth above.

Two of the parties' arguments warrant additional discussion.

First, the Court will decline, at this point, to preclude Rogers' testimony based on Jarecke's argument that he lacks the requisite qualifications "to testify about how an insurer should handle a claim." *ECF 51 at 7*. The Court will allow ANPAC, if it chooses, to attempt to lay foundation for Rogers' testimony but will sustain at trial objections to any testimony that is without adequate foundation.

Second, the Court will grant ANPAC's motion, at this time, to preclude Bauer "from speculating about ANPAC's purported ulterior motives in adjusting the claims arising out of the subject motor vehicle accident." *ANPAC's Opening Br. (ECF 60) at 2*. Where an expert fails to demonstrate that a particular opinion is more than a mere subjective belief, unsupported speculation, or a bald conclusion, the opinion is subject to exclusion under Fed. R. Evid. 702. *Claar v. Burlington Northern Railroad Company*, 29 F.3d 499, 502 (9th Cir. 1994); *Flagstone Development, LLC v. Joyner*, 2011 WL 5040663, *2 (D. Mont. 2011). Consistent with this authority, the Court will not allow testimony that is speculative or based on inappropriate assumptions. ANPAC may make proper objections at trial to any testimony that it deems subject

to appropriate objection.

### B. ANPAC's Motion to Exclude Clarke's Testimony

#### 1. Parties' Arguments

ANPAC seeks to exclude some of the anticipated testimony of Craig Clarke, whom Jarecke identified as an expert witness to testify concerning her alleged economic loss. *ECF 61*. ANPAC argues that the Court should prohibit Clarke from testifying respecting two of his opinions.

First, ANPAC argues that the Court should preclude Clarke from testifying concerning his theories on "earnings capacity impairment" for lack of foundation. *ANPAC's Br. Re: Clarke (ECF 62) at 8-10*. It argues that "Clarke's assumption that Jarecke will have future lost earning capacity at 3%, 5% or 7% lacks foundation[ ]" because Jarecke's treating physician, Dr. Velin, does not support the assumptions upon which Clarke based his opinion. *Id. at 9-10*.

Second, ANPAC argues that the Court should preclude Clarke from opining that Jarecke was delayed 2.5 years from entering the workforce. *Id*. ANPAC argues that Clarke's opinion lacks factual

support in the record because evidence shows that Jarecke was delayed, at the most, for only 1.5 years from entering the workforce post-college. *Id*.

Jarecke responds that the Court should deny ANPAC's motion for two reasons. *Jarecke's Resp. Re: Clarke (ECF 64) at 3-5*. First, she argues:

> the existence of some degree of permanent cognitive injury ought to be sufficient in and of itself to allow a jury to infer some economic impact, and hear the explanations of an economist on how such numbers are considered by experts. Further, the mere fact of being delayed for two full years of college has a profound economic impact.

*Id*. at 3.

Second, Jarecke argues, there exists an "abundance of factual foundation for [Clarke's] testimony." *Id. at 4-5*. For example, Dr. Velin testified at his deposition that Jarecke will have to "work a little bit harder" to achieve what she would have achieved before her injury. Dr. Velin explained that Jarecke's impairments, while not completely disabling, will contribute to a diminution in function that will translate into an impact on her future potential earnings. *Id. at 4*.

**2. Analysis**

When expert testimony is unsupported by sufficient facts and is based on unfounded assertions presented by one party, the testimony is not reliable and may be excluded. *See In re Silberkraus*, 336 F.3d 864, 871 (9th Cir. 2003) (*citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242(1993) and *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) (discounting expert testimony with an insufficient factual basis)).

Here, the Court cannot grant ANPAC's motion on the current record. As Jarecke argues, Dr. Velin, in his deposition, testified that Jarecke is functional and not disabled, but also noted that she has "mild impairments[ ]" and "might have to work a little harder in some areas than she otherwise would have" to function in a job after college. *ECF 64-1 at 3*. ANPAC's challenge to Clarke's testimony derived from this foundational basis is a proper subject for cross-examination rather than for in limine exclusion of the testimony.

ANPAC's position that the record supports a finding that Jarecke was delayed entering the workforce for only 1.5 years rather than 2.5

19

years also is a subject appropriately developed through cross-examination. Thus, the Court will deny ANPAC's motion in limine. ANPAC may object at trial to any testimony that it deems appropriate.

IV. **CONCLUSION**

Based on the foregoing, **IT IS ORDERED** that:

1. Jarecke's motion in limine to exclude the anticipated testimony of ANPAC's liability expert, Guy Rogers, (*ECF 50*) is GRANTED IN PART and DENIED IN PART, as set forth above;

2. ANPAC's motion in limine to exclude the anticipated testimony of Jarecke's liability expert, David Bauer, *(ECF 59)* is GRANTED IN PART and DENIED IN PART, as set forth above; and

3. ANPAC's motion in limine to exclude the anticipated testimony of Craig Clarke *(ECF 61)* is DENIED.

DATED this 12th day of November, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge